(No. 18224.—Decree affirmed.)
JULIUS SALLO, Appellant, *vs.* FREDERICKA A. BOAS, Appellee.

*Opinion filed October 22, 1927.*

1. SPECIFIC PERFORMANCE—*parol evidence is not admissible to modify written agreement.* A written contract is one which is all in writing, so that all its terms and provisions can be ascertained from the instrument itself, and when parties deliberately reduce their agreements to writing, parol evidence is not admissible to contradict, add to, explain or modify the writing.

2. SAME—*evidence must be convincing to justify reformation of instrument.* A court of equity may reform a written instrument so as to correctly state the agreement of the parties and then enforce performance of the reformed contract, but to justify such action, where the mistake is not admitted, the evidence of it must be convincing.

3. SAME—*when contract cannot be enforced because of uncertainty.* A contract for a conveyance in the form of a receipt, which does not contain the usual covenants or agreements in regard to title, the character and time of the conveyance, the security for deferred payments and interest, if any, and which is so worded that it is uncertain whether an existing encumbrance is to be considered as a part of the purchase price or to be added to the purchase price to make the total consideration for the conveyance, is too uncertain to be specifically enforced.

APPEAL from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding.

327—10

HOOVER & CODY, for appellant.

GEORGE W. STOCKWELL, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Julius Sallo filed a bill in the circuit court of Cook county to compel the specific performance of the following contract:

"CHICAGO, ILL., *Feb. 5, 1923.*

"Received of Julius Sallo one hundred dollars to apply to purchase of 48-58 E. 16th St., Chicago Heights, Ill. Purchase price $14,000—$1000, first payment; $750 on principal on August 5, 1923, and $750 each six months thereafter until fully paid.—Purchaser to assume first loan of $4500 to E. J. Pauling, trustee.

FREDERICKA A. BOAS."

The bill averred that Fredericka A. Boas by the contract undertook to convey the fee simple title to the complainant by a warranty deed as soon as a memorandum showing a satisfactory title in her was furnished to the complainant; that the amount to be paid to the defendant was $9500, and that he was to assume the mortgage on the property for $4500, making the full purchase price of $14,000. It alleged the complainant's ability and willingness to perform, his payment to the defendant of $100 cash and offer to pay $1000 when satisfactory evidence of title was delivered to him and pay all the money required by the agreement to be paid by him, and the refusal of the defendant to perform her part of the contract. A demurrer was sustained to the bill, and it was amended so as to aver, in addition to the facts set out in the original bill of complaint, a mistake of the scrivener in preparing the contract; that it was expressly agreed that the total purchase price was to be $14,000 and the purchaser should assume the mortgage, which would leave the remainder of the purchase price to be paid to the defendant of $9500, only. The amended bill prayed for reformation of the contract in accordance with these averments, as well as for specific performance. The general demurrer to the amended bill

was sustained and the bill was again amended.  As finally amended the bill alleged that on February 5, 1923, the defendant, being seized and possessed of the real estate in question, entered into an agreement with the complainant to sell the real estate to him for the consideration of the payment of the purchase price of $14,000 upon the following terms and conditions:  $100 cash with the execution of the agreement, which was to be applied on the down payment of $1000, and $750 on the principal of the remainder each six months thereafter until fully paid, the purchaser to assume the mortgage loan of $4500 to E. J. Pauling, trustee;  that the agreement was evidenced in writing, which was set out in the bill in the form which has already been stated, signed by the defendant and delivered to and accepted by the complainant, and the sum of $100 named in the writing was paid by the complainant and accepted by the defendant;  that upon the execution of the agreement the defendant agreed to sell and convey the real estate to the complainant in consideration of the purchase price of $14,000, to be paid to the defendant as provided in the agreement;  that the defendant then informed the complainant that she would immediately procure a memorandum of title, abstract of title or guaranty of title showing the title in her and would deliver it to the complainant; that defendant failed to procure the evidence of title for the use of complainant, but, notwithstanding such failure, the complainant tendered to her each and all of the several sums of money required to be paid by him in accordance with the terms of the contract and demanded of her a conveyance of the property, but she refused to accept the sums of money so offered by the complainant and notified him that she would refuse to carry out her agreement to convey the property to him;  that $100 of the purchase money was accepted by the defendant and she still retains it;  that defendant retained possession of the real estate and has collected the rents, aggregating more than $5000, and the

complainant is entitled to an accounting for the rents so received by the defendant since the execution of the agreement, and his offer to perform and her refusal to accept performance by the complainant. The bill further averred the complainant's readiness, willingness and ability to perform his part of the agreement and prayed for a specific performance and accounting and for general relief. The defendant answered the last amended bill, admitting the execution of the agreement as alleged but denying that the consideration was other than as specifically set forth in that agreement. The answer denied the making of either the first or second payment as required by the contract, and alleged that the defendant tendered to complainant the $100 which she had received from him as admitted in the receipt. It denied that defendant ever informed the complainant that she would immediately proceed to procure the memorandum of title, and alleged that the consideration for the purchase of the property was to be $14,000 clear to her and subject to the loan of $4500. It denied that the complainant ever tendered to her the sums of money required by the terms of the agreement, and alleged that he maintained that he should pay her the sum of $9500 only. The cause was heard by the chancellor in open court, who entered a decree dismissing the bill, from which the complainant has appealed.

The suit is based upon the contract set out in the bill. Its execution is admitted but the parties disagree as to its meaning, the principal point of disagreement being as to whether the contract requires the complainant to pay $14,000 to the defendant and assume the payment of the mortgage in addition, or to pay $14,000 to the defendant, deducting the amount of the $4500 mortgage. The complainant, in the interpretation of the contract, which he set up in his original bill, averred not only that the amount he was to pay was $9500 and that the assumption of the mortgage for $4500 was included in the full purchase price of

$14,000, but averred that the defendant undertook also to procure a memorandum showing a satisfactory title in her and to deliver it to the complainant. The demurrer having been sustained to this bill, the complainant in his amended bill alleged a mistake of the scrivener in the preparation of the contract in regard to the purchase price and prayed for a reformation of the contract. After the demurrer was sustained to this amended bill he abandoned the theory of a mistake in the contract, and in the amended bill which he subsequently filed omitted all allegations of mistake and stood upon the contract, praying for its specific performance as it was written. Evidence was introduced by both parties of the negotiations and conversations resulting in the execution of the written agreement, the appellant contending that it was expressly agreed that the purchase price was to be $14,000, from which was to be deducted the amount of the mortgage which he assumed, and the appellee contending that it was expressly stated that the consideration was to be $14,000 net to her and the appellant was to assume the mortgage. All this evidence was incompetent and its admission had no tendency to prove the bill, which was based upon the written contract. It is elementary that when parties deliberately reduce their agreements to writing, parol evidence is not admissible to contradict, add to, explain or modify the writing. It would not seem necessary to cite authorities in support of the proposition that a written contract is one which is all in writing, so that all its terms and provisions can be ascertained from the instrument itself, but this court has found occasion to make that statement several times. *Gronowski* v. *Jozefowicz,* 291 Ill. 266; *Westphal* v. *Buenger,* 324 id. 77; *Peiffer* v. *Newcomer,* 326 id. 189.

The appellant and his counsel, when the first amended bill was filed praying the reformation of the contract, included in the allegation as to the mistake of the scrivener not only the omission of the alleged agreement of the de-

fendant to furnish an abstract or evidence of title, but the omission to specifically incorporate in the written agreement the agreement of the parties expressly providing that the purchase price of $14,000 included the $4500 mortgage indebtedness which the appellant assumed as so much of the purchase price named in the written memorandum, though the complainant alleged in the amended bill that the fair inference to be drawn from the written memorandum is that the total purchase price, including the mortgage indebtedness, was $14,000 and it was so intended by the parties. The question to be determined, therefore, is whether the written contract is so definite and certain in its terms that it can be specifically enforced.

It has long been the settled law that a court of chancery may reform a written instrument so as to correctly state the agreement of the parties and then enforce performance of the reformed contract. (*Hunter* v. *Bilyeu,* 30 Ill. 228.) To justify such action, however, where the mistake is not admitted, the evidence of it must be convincing. (*Carson* v. *Davis,* 171 Ill. 497; *Mills* v. *Lockwood,* 42 id. 111.) In this case, however, the appellant is not seeking to reform the contract but to enforce it, and to entitle a party to enforce specific performance of a contract it must be clear and certain in its terms and be admitted or proved with a reasonable degree of certainty. (*Westphal* v. *Buenger, supra.*) This contract is exceedingly informal. The description of the land is by street numbers, only. This, however, is not necessarily a valid objection to the contract for it is possible to identify the property by such description, and it is not claimed that the description is insufficient. There are none of the covenants or agreements which are usually contained in an agreement for the sale of real estate in regard to the title of the seller, the evidence of title to be furnished, the character of the conveyance to be made, the time of the conveyance, the security for the deferred payments, and the rate of interest which

they shall bear, if any. The purchase price is stated to be $14,000, which may be the price which the purchaser is to pay to the seller for what the seller conveys to the purchaser, the amount subject to the mortgage, and this is no doubt the meaning which it would bear in a contract of this kind where no provision is made for the warranty of the title or covenant against encumbrances and it is expressly stated that the purchaser assumed the payment of the mortgage. In any event, it cannot be said that the language of the written contract is so definite that it can be held, as a proposition of law, to authorize the deduction from the stated purchase price of the mortgage which the purchaser assumes. *Carson v. Davis, supra,* is a case of a somewhat similar contract, specific performance of which was there sought, which provided that Carson should exchange his 240-acre farm at $62 an acre for Davis' brick house, six acres at $6000 and a two-story frame house at $3600 and pay $5400, Davis to assume an encumbrance of $9700 on the farm and Carson an encumbrance on the two-story house of $2000. The payment of $5400 by Davis and the assumption of these encumbrances would make a much larger amount than was agreed to be paid if the prices fixed by the contract upon the farm and city property were correctly stated in the contract. There was no explanation of the mistake and no allegation that it was a mistake, and it was held that the contract was so uncertain and ambiguous that the court would not decree a specific performance.

It cannot be said that this contract clearly, certainly and without ambiguity authorizes the deduction of the mortgage from the $14,000 purchase price. In our opinion it does not authorize the deduction, and the decree of the circuit court refusing the specific performance of the contract was right.

The decree is affirmed.

*Decree affirmed.*